## GEORGE PAGE vs. NATHAN P. MERWIN.

New Haven Co., June T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

Words are actionable *per se* which impute the commission of crimes involving moral turpitude, although they are not denominated infamous.

To charge another with fornication is slanderous *per se*.

Where, in an action for slander, the court struck out certain allegations of the defendant's second defense, but the same matters could have been proved under his first defense, which was a general denial, and no evi-

dence was rendered inadmissible in his favor nor admissible against him that would not have been under the first defense, it was held to be no error.

Where the court refused to strike out certain allegations of the complaint, the truth of which the defendant, by his answer previously filed, had either fully or substantially admitted, it was held to be no error.

Where the defendant was charged with having slanderously imputed to the plaintiff the paternity of a certain illegitimate child, it was held that a written agreement entered into secretly by the defendant with the selectmen of the town, for the payment of the expense of supporting the child, and which the court regarded as not of the nature of a compromise, was admissible as tending to prove that the defendant himself was the father of the child.

The question whether damages are excessive can be considered only when the whole evidence is brought up on the appeal.

[Argued June 4th—decided July 8th, 1886.]

ACTION for slander; brought to the Superior Court in New Haven County. The complaint contained several counts, the first of which sufficiently presents the matter charged.

1. From on or about December 21st, 1882, to May 1st, 1883, the plaintiff was in the employ of the defendant at work upon his farm, and the plaintiff during the time of the employment aforesaid lived in the family of the defendant at his house in said Woodbridge.

2. On September 8th, 1879, the defendant was duly appointed by the probate court for the district of New Haven, the guardian over the person and estate of one Jenny L. Downs, then of Hamden in said county, a minor female, and from the time of such appointment up to the date of this writ and complaint, has been her lawful guardian as aforesaid. And during all of the said time up to or about the 6th day of December, 1883, the said Jenny L. Downs has resided with the defendant at his said house in Woodbridge.

3. On December 6th, 1883, the said Jenny L. Downs was delivered of an illegitimate child in the town of Hamden in said county.

4. On or about December 10th, 1883, the defendant spoke in the hearing of Frederick Goodwin, of said Woodbridge, and of other persons, the following words: " The child "

(meaning the illegitimate child aforesaid delivered of said Jenny L. Downs), "is Page's" (meaning the plaintiff.) "Page" (meaning the plaintiff), "is the father of the child" (meaning the illegitimate child aforesaid). "The young one" (meaning the illegitimate child aforesaid), "is Page's" (meaning the plaintiff), and meaning to impute thereby that the plaintiff had committed the crime of fornication with the said Jenny L. Downs.

5. Said words were false and malicious.

The defendant demurred to the complaint on the ground that it was not alleged that the plaintiff had sustained any loss or damage by reason of the utterance of the words by the defendant. The court (*Andrews, J.,*) overruled the demurrer.

The defendant then filed a general denial as an answer to all the counts, with a second defense setting forth in detail the circumstances under which the words were uttered, so far as the speaking of them was admitted, and making sundry statements with regard to the character and conduct of the girl, and his belief at the time that the defendant was the father of the child, and the absence of all malicious intention on his part. The plaintiff moved that these allegations of the second defense be stricken out, and the court (*Sanford, J.,*) struck them out. The defendant then moved that paragraphs one, two and three of the complaint be stricken out, but the judge denied the motion. The defendant excepted to both rulings. The defendant by his answer filed at a term previous to that of the two motions last stated, had in direct terms admitted the truth of paragraph one of the complaint, that of paragraph two, except that the said Jenny had lived in his family only till about August 1st, 1883, instead of December 6th, 1883, and that of paragraph three according to his belief.

The case was afterwards tried to the jury before *Phelps, J.*

On the trial it was claimed and not denied that at the commencement of the pregnancy of the said Jenny L. Downs, the plaintiff was in the employment of the defendant as an ordinary laborer on his farm, that the defendant was a wid-

ower, that the said Jennie was rendering service in his family, and that both the plaintiff and said Jennie boarded and lodged there, and that the defendant was worth about $10,000.

After having offered proof of and claiming to have proved the speaking and the causing to be written and published the alleged slanderous and libelous words, the plaintiff offered in evidence a certain written agreement of the defendant with the selectmen of the town of Hamden, as tending to prove an admission by the defendant that he had wrongfully and falsely accused the plaintiff, and that he was himself the father of the child, and also as showing his motive for protecting himself against the consequences of his own misconduct, which, as the plaintiff claimed, had led the defendant to so speak and cause to be written and published the alleged slanderous words.

The agreement was as follows:—

" Know all men by these presents, that I, Nathan P. Merwin, of Woodbridge, county of New Haven, in consideration that neither the town of Hamden in said county, nor the parents of Jennie L. Downs of said Hamden, do institute any legal proceedings against me of any kind or nature on account of the said Jennie L. Downs being pregnant with an illegitimate child, or for the support of said alleged illegitimate child, or for the support or nursing of the said Jennie L. Downs during her confinement, do hereby covenant and agree to and with said town of Hamden and with the selectmen thereof, that said child of said Jennie L. Downs shall not be or become a charge or expense to said town of Hamden nor to the selectmen thereof during such time as under the statute laws of this state the person accused of begetting such child would be liable for the support of such child, and only to an amount not exceeding the amount to which under said statute laws the person accused of begetting such child would be liable, and provided that neither said town nor the selectmen thereof shall furnish any money or supplies to said Jennie L. Downs nor to said illegitimate child when born, nor take any legal proceedings for the support

of said child or the mother thereof, without giving me notice in writing one week prior thereto of the intention to do so; and provided that neither said town of Hamden nor the said Jennie L. Downs nor the parents of said Jennie shall institute any legal proceedings for either the support of said child, or for causing the pregnancy of said Jennie L. Downs, with the consent of said town. In witness whereof, I have hereunto set my hand and seal this seventh day of December, 1883. "NATHAN P. MERWIN. [L. S.]"

The defendant objected to the admission of this paper and claimed to have signed it under a promise by the selectmen of Hamden that it should be kept secret; and also because if the plaintiff was sued by the town of Hamden for the maintenance of the child, which was threatened, he would charge the defendant with having instigated the suit and be revenged on him by burning his buildings. The court overruled the objection, and admitted the paper, and the defendant duly excepted.

The plaintiff claimed to have proved the speaking by the defendant of the alleged slander, and that the words were spoken falsely and maliciously, and that the defendant got the said Jennie with child, and to shield himself from the consequences of his conduct uttered said words to her mother, and to one Northrop, and one Goodwin, and fraudulently persuaded the said Jennie to say to Dr. Wright, the attending physician at the time of the birth of the child, that the plaintiff was its father, and thereby caused the physician in his return to the registrar of births of the town to make the same statement, and the registrar to publish it in the public records of the town.

The defendant denied that he had improperly influenced the said Jennie in any way, or had had sexual intercourse with her, or had uttered the alleged slanderous words, and claimed that he had said nothing except what he was authorized by the said Jennie to say, and what he believed to be true, that reports that the plaintiff was the father of the child were current in the community before he had said anything on the subject, and that if he had said to Goodwin

and Northrop what was claimed, he was simply repeating what had been previously said by others and currently reported, and that what he had said to Mrs. Downs was in a private conversation with her about the condition of her daughter, and therefore privileged and proper.

The plaintiff claimed to have proved that the current reports, if they existed, were wholly due to the acts and statements of the defendant.

These and all other claims of the parties were fully submitted to the jury, and the court instructed them that if the defendant said nothing to Mrs. Downs of an intentionally slanderous character, and only conversed with her with respect to her daughter's condition, such conversation was privileged and not actionable.

The jury were likewise fully instructed on the question of general and punitive damages, and returned a verdict of $2,000 for the plaintiff, which was accepted by the court.

The defendant claimed the damages found by the jury to be excessive. The court, assuming that the jury found the claims of the plaintiff to be true, and those of the defendant untrue, finds the amount of the verdict not excessive.

The defendant appealed.

*W. C. Case* and *W. H. Ely*, for the appellant.

1. The words charged to have been spoken are not actionable *per se*, and only upon proof of special damage. "Spoken words which impute that the plaintiff has been guilty of an indictable offense, are actionable without proof of special damage. If the offense imputed be not indictable, but only punishable summarily before a magistrate by penalty or fine, the words will not be actionable *per se*. Odger on Libel & Slander, 54. The same doctrine has been held by many of the courts of last resort of the several states, where this question has come up recently for adjudication; and it makes no difference whether the offense be punished by fine, by imprisonment, or by both, so long as it is not indictable, and not punishable by an infamous punishment. *Pollard* v. *Lyon*, 91 U. S. R., 225, 229; *Brooker* v. *Coffin*, 5

Johns., 188, 191; *Bassell* v. *Elmore*, 48 N. York, 561, 563; *Davis* v. *Brown*, 27 Ohio St., 326, 328; *Farnsworth* v. *Storrs*, 5 Cush., 412, 415; *Wagaman* v. *Byers*, 17 Maryl., 183, 187; *Griffin* v. *Moore*, 43 id., 246, 251; *Shafer* v. *Ahalt*, 48 id., 171, 173. It is claimed, however, that the rule in Connecticut is otherwise. The only authority on which such claim can rest is the case of *Frisbie* v. *Fowler*, 2 Conn., 707. But in this case the language was used in reference to a married woman, and *necessarily* thereby imputed to her, if it imputed anything, the crime of adultery, which then was, and now still is, an indictable crime, and then was, and now still is, punishable with an infamous punishment—in the state prison; and whatever was said in that case in respect to language imputing merely fornication with an unmarried female was a mere *obiter dictum*. But conceding it to have the force of a decision, it cannot affect the case at bar, for at that time, November, 1818, fornication was an indictable crime. It was punishable, till as late as 1821, by whipping at the post, the same as adultery, and. hence, down to that time (1821), was an infamous crime, because indictable in the county court, which had sole jurisdiction, and had power to summon a grand jury; and the offense of fornication was not then cognizable by a justice of the peace in a summary manner without indictment, as it now is. As the complaint is now made to a justice of the peace, who has jurisdiction to hear and determine the case, and sentence the accused, but has no power to summon a grand jury, the offense is not and cannot be indictable, nor is the punishment an infamous one. And being only a misdemeanor, not indictable, not punishable with an infamous punishment, not necessarily even for thirty days in the county jail, even words which impute this offense are not actionable *per se*. *Gosling* v. *Morgan*, 32 Penn. St., 273; *Stitzell* v. *Reynolds*, 67 id., 54; *McKee* v. *Wilson*, 87 N. Car., 300.

2. The court erred in erasing a portion of the defendant's answer. Those allegations showed that the speaking of the words was done with no malicious intent, in the honest belief that they were true, and in. circumstances which

made the speaking privileged. *Halstead* v. *Nelson*, 24 Hun, 395; *Moore* v. *Mauk*, 3 Bradw. (Ill.,) 114. The court also erred in refusing to strike out those parts of the complaint which were impertinent, and especially in allowing them to stand while expunging the part of the defense which was direct answer to that part of the complaint.

3. It being claimed by the defendant that the words were not uttered in any defamatory sense, and they being susceptible of a meaning that was not defamatory, it was the duty of the court to submit to the jury the question whether they were used in a defamatory sense. Odger on Libel & Slander, 94; *Shattuck* v. *Allen*, 4 Gray, 540, 546; *Downs* v. *Hawley*, 112 Mass., 237, 241; *Sanderson* v. *Caldwell*, 45 N. York, 398, 401; *Robinson* v. *Drummond*, 24 Ala., 174, 179; *Rodgers* v. *Kline*, 56 Miss., 808, 816; *Van Vactor* v. *Walkup*, 46 Cal., 124, 134. The words, if they are alleged to charge a crime, must legally charge it, beyond all question. *Ward* v. *Clark*, 2 Johns., 10; *Dexter* v. *Taber*, 12 id., 239; *Abrams* v. *Smith*, 8 Blackf., 95; *Carmichael* v. *Shiel*, 21 Ind., 66.

4. The court erred in admitting the bond given by the defendant to the selectmen of the town. This bond admitted nothing. By it the defendant merely agreed to support the child. He may have done so, and we claim he did, to save himself from the revenge of the plaintiff. It may have been done to save some other person from exposure. If it was to save himself, then it was a compromise of the matter with the selectmen. It is clearly an arrangement to prevent legal proceedings by the selectmen. It is therefore a compromise. A compromise is always protected from any use of it against a party who joined in it. *Hartford Bridge Co.* v. *Granger*, 4 Conn., 148; *Stranahan* v. *East Haddam*, 11 id., 507; *Strong* v. *Stewart*, 9 Heisk., 143. And it makes no difference that the present plaintiff was not a party to the compromise. *Gilhooley* v. *Sanborn*, 128 Mass., 485.

*J. W. Alling* and *J. H. Webb*, for the appellee.

PARK, C. J. The demurrer to the complaint in this case

is based upon the claim that it is not slanderous *per se* to impute to a person the commission of the crime of fornication.

So long ago as the case of *Frisbie* v. *Fowler*, 2 Conn., 707, Chief Justice SWIFT said:—" By the laws of this state the breach of chastity in every form, from adultery to mere lascivious carriage, is punished by statute. The consequence has been that these charges have become words actionable in themselves. This point has been repeatedly decided, and may be considered to be the settled law of this state." In the same case Judge HOSMER said:—" By the common law of this state (to her honor be it spoken,) words imputing to a woman, whether she is married or single, a violation of chastity, are themselves actionable."

The defendant claims that when this case was decided the crime of fornication exposed offenders to infamous punishment, which is not the case at the present time, and that therefore the case is no longer authority on the subject. But the character of the punishment annexed to the crime is not alluded to in the opinions. The reason given is, that the crime involves moral turpitude.

In the case of *Pollard* v. *Lyon*, 91 U. S. R., 225, may be found a thorough examination of the law on this subject. It is there held that words are actionable *per se* which impute the commission of crimes involving moral turpitude, although such crimes are not technically denominated infamous.

We think the court committed no error in holding the complaint to be sufficient.

And we likewise think the court committed no error in expunging from the record certain parts of the defendant's second defense to the several counts. An examination of them will show that they contain nothing but a detailed statement of the circumstances attending the transactions, in the course of which the plaintiff claims that the slanderous words were uttered which are set forth in the several counts of his complaint, which circumstances, if proved, the

defendant claims would conclusively show that no slander-
ous words were uttered on any of those occasions.

It is clear that the defendant could have proved all those
circumstances as well under his first defense of a general
denial of the facts alleged in the complaint, as he could
have done under the paragraphs in question if they had not
been stricken out.   The action of the court did not deprive
the defendant of any legitimate evidence, neither did it
make evidence admissible against him that otherwise could
not have been received.   We think there was no error in
this regard.

The defendant moved the court to strike out of the com-
plaint paragraphs one, two and three, and that too after the
defendant by his answer had expressly admitted paragraph
one to be true, paragraph two to be true with the excep-
tion of an allegation as to the length of time that Jennie
Downs resided at the defendant's house, and paragraph
three to be true according to his best knowledge and belief.
The court refused to comply with the request, and we think
committed no error in so doing.

On the trial of the cause the plaintiff offered the follow-
ing contract in evidence " as tending to prove an admission
by the defendant that he had wrongfully and falsely accused
the plaintiff, and that he was himself the father of said
child; and also as showing the reason and motive of pro-
tecting himself against the consequences of his own miscon-
duct which, as the plaintiff claimed, had led the defendant
to so speak and cause to be written and published the al-
leged slanderous and libelous words."

[This contract is fully set out in the statem. it of the case.]

The defendant objected to the admission of this evidence,
and claimed to have signed the document under a promise
by the selectmen of Hamden that it should be kept secret,
and also because if the plaintiff was sued by the town for
the maintenance of the child, which was threatened, he
would charge the defendant with having instigated the suit,
and be revenged on him by burning his buildings.   The

court admitted the evidence, and this is made the ground of a claim of error.

The defendant insists that the contract was executed and delivered by the defendant as a compromise between himself and the town of Hamden. We see nothing in the writing that looks like a compromise. The defendant did all that the town of Hamden could have demanded of the father of a bastard child, and did it voluntarily and without objection so far as it appears. The act shows conduct of the defendant inconsistent with his claims on the trial, and we think it was admissible to be considered by the jury.

Several technical objections are made by the defendant to the charge of the court to the jury, which we do not deem it necessary or important to consider in detail. It is sufficient to say, that we do not see how the defendant could have been prejudiced by any of them.

We cannot consider the question whether the damages are excessive. It is not properly before us. A consideration of that question would require that all the evidence upon the trial should come before us.

There is no error.

In this opinion the other judges concurred.