MICHAEL E. MORIARTY v. FLORA LIPPE ET AL.

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, Js.

Argued November 2, 1971—decided February 8, 1972

*Jules Lang,* for the appellant (named defendant).

*John Keogh, Jr.,* with whom, on the brief, were *Walter E. Whitton* and *J. Allen Kerr, Jr.,* for the appellant (defendant The Hour Publishing Company).

*Robert A. Slavitt,* with whom, on the brief, was *Abraham D. Slavitt,* for the appellee (plaintiff).

Shapiro, J.  The plaintiff, a patrolman in the Norwalk police department, brought this action seeking damages against the named defendant Flora Lippe, hereinafter referred to as Lippe, and The Hour Publishing Company, hereinafter referred to as The Hour.  The plaintiff's amended complaint is in three counts.  The first and second counts are directed against Lippe only.  The first count alleges slander arising from a street incident in Norwalk on August 27, 1966.  The second count alleges libel in the publication of a letter sent to the police commissioners, mayor and chief of police of Norwalk on August 29, 1966.  The third count, directed against The Hour only, alleges libel in the publication in its newspaper of a letter from Lippe dated August 29, 1966.  The defendants in their answers pleaded both truth and fair comment on a public official as special defenses.  Lippe also filed a counterclaim seeking damages in which she alleged physical injury and emotional upset.

The jury returned a general verdict on the complaint against both defendants for $4000 and found for the plaintiff Moriarty on Lippe's counterclaim.

Each defendant moved that the court set aside the verdict and render judgment notwithstanding the verdict in accordance with motions for a directed verdict previously made, on which the court had reserved decision.  The court denied the motions to set aside the verdict and judgment was rendered in accordance with the jury's verdict.  The defendants have appealed, assigning error in rulings on evidence, in the court's refusal to charge as requested, in the court's charge and in the denial of their motions to set aside the verdict and render judgment notwithstanding the verdict.

We turn first to the defendants' claims that the

court erred in denying their motions to set aside the verdict and render judgment notwithstanding the verdict because the verdict is not supported by the evidence. We test the court's action in these respects by the evidence printed in the appendices to the briefs. *Southington* v. *Francis,* 159 Conn. 64, 68, 266 A.2d 387; *Prystash* v. *Best Medium Publishing Co.,* 157 Conn. 507, 508, 254 A.2d 872; *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 498, 208 A.2d 748; *Smith* v. *Housing Authority,* 144 Conn. 13, 14, 127 A.2d 45; see Practice Book §§ 716, 718, 721. For the attack on the court's refusal to set aside the verdict to succeed, it must appear that the evidence furnished no reasonable basis for the jury's conclusion that a libel or slander had been committed. *Petrizzo* v. *Commercial Contractors Corporation,* supra, 499. The evidence must be considered in the light most favorable to the plaintiff. *Grills* v. *Pepsi-Cola Bottling Co.,* 151 Conn. 627, 628, 201 A.2d 185; *Petrillo* v. *Bess,* 149 Conn. 166, 167, 179 A.2d 600; *Kazukynas* v. *N. C. Casciano & Sons, Inc.,* 149 Conn. 1, 2, 174 A.2d 796; *Kerrigan* v. *Detroit Steel Corporation,* 146 Conn. 658, 660, 154 A.2d 517.

The jury could have found as follows: On August 27, 1966, at approximately 12:45 p.m., while in the course of walking his beat, the plaintiff saw a vehicle improperly parked in front of an A & P store on Belden Avenue in the town of Norwalk. The plaintiff blew the horn of the car to alert the operator to come out and remove the vehicle, which was impeding the traffic flow on United States route 1 at a particularly busy intersection. About two or three minutes later a woman identified as Flora Lippe emerged from the A & P store and, in a loud voice that could have been heard across the street, said to the plaintiff, "God damn you. Don't you know

how to write a ticket, you stupid son of a bitch." The plaintiff then asked Lippe for her license and registration. As she produced her license and registration she continued a verbal barrage at the plaintiff, wanting to know his name, who his father was, whether he was after the chief's job and telling the plaintiff that his father would never do anything like that to her, all of this in a screaming voice that attracted a crowd of thirty-five to forty people. The plaintiff did not respond verbally to her as he wrote out a uniform traffic summons. Lippe, screaming and shouting, referred to the plaintiff as a clown, a big fat ape and a smart aleck, claiming he was out to make a name for himself and that he was out for the chief's job. The plaintiff informed her that she was being issued a summons and requested that she sign the bottom line of the summons, but she refused to do so or to accept the ticket and started to leave the scene. The officer again told her she would have to sign the summons or would have to come with him to police headquarters. In response to this, she stated that she would not sign the summons and again described him as a big fat oaf, an ape and a clown many times over in a loud voice, all in the presence of a substantial crowd there assembled. It was only after the officer advised her that she was in breach of the peace and would have to accompany him, and Lippe attempted to leave in spite of that admonition, that the officer first placed a hand on her person, taking hold of her right wrist. At this point, Lippe physically attacked the plaintiff with her pocketbook and attempted to kick him and otherwise to inflict harm on him, and in defense of himself against this attack he exercised sufficient force to prevent her from further attacking him, but no additional force. Albert Prato, a captain on the Norwalk police de-

partment and a superior of the plaintiff, then happened on the scene and in response to his inquiry about what had transpired, Lippe stated in a loud voice that "this ape almost twisted my arm off," that she was surprised that the "ape" did not take his gun out and shoot and kill her, that he was treating her like common dirt, that she was a business woman and had not done anything wrong, and that she did not see why this "ape" was picking on her in this way. On arrival at police headquarters, she continued to shout at the plaintiff, calling him an "ape" and, addressing Lieutenant Varanay of the Norwalk police department, a superior officer of the plaintiff, accused the plaintiff of attempting to tear her arm out of its socket and again stated that she did not understand why the plaintiff did not take a gun and shoot her.

All of the foregoing events occurred on Saturday, August 27, 1966. On Monday, August 29, two days after the incident, The Hour published a news article concerning the incident. The article gave no hint that a police officer degraded a citizen. Two days later, on Wednesday, August 31, The Hour published in its "letters to the editor" column, "People's Forum," a "letter of protest" submitted by Lippe. On August 30 or 31, the chief of police, a police commissioner and the mayor of Norwalk received complaints against the plaintiff, delivered by Lippe, as a result of which the plaintiff was requested to appear in the chief's office. The complaints, identical in content to the "letter of protest," contained the words: "He came up to me, grabbed my arm, twisted it back until it felt as though it came loose out of its socket" and "I would like to bring charges against Officer Moriarty for being abusive and using unnecessary force and treating a respect-

able citizen like a common criminal." As a result of the publication of the letter by The Hour, the plaintiff was the victim of continual verbal harassment, embarrassment and humiliation due to his part in the incident, both from the general public and from his fellow officers. The investigation conducted by the Norwalk police department made other officers aware of the incident, and this greatly diminished the plaintiff's efficiency as a police officer and his acceptance by fellow officers in the line of duty until, as a result of an investigation by the commissioner into the charge of police brutality, the plaintiff was exonerated of any charge of misconduct. Subsequent to August 31, 1966, Lippe withdrew the charge of misconduct against the plaintiff from the complaint files of the police commissioners.

## I

We consider first the appeal of The Hour. It assigns as error the court's denial of its motions for a directed verdict, to set aside the verdict, and for judgment notwithstanding the verdict because the verdict is not supported by the evidence.

We assume for the purpose of discussing these motions that the letter published by The Hour was false and that its content was libelous per se.[1] If this be so, in order to sustain a verdict of libel against The Hour the inquiry is whether there was sufficient evidence from which the jury could reasonably conclude that The Hour published the letter with "actual malice," that is, with knowledge that it was false or with reckless disregard of whether

---

[1] The defendant The Hour raised no exception to the court's charge that the article was libelous per se, requested no contrary charge, and assigned no error to this charge.

it was false. This constitutionally compelled standard of review, first enunciated in *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 280, 84 S. Ct. 710, 11 L. Ed. 2d 686, delimits the power of a state to award damages for libel in actions brought by public officials against critics of their official conduct.

The motivating force for *New York Times Co.* v. *Sullivan,* supra, 270, was "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that . . . [such debate] may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." The plaintiff here has, or appears to the public to have, substantial responsibility for or control over the conduct of government affairs, at least where law enforcement and police functions are concerned, sufficient to be a public official. Although a comparably low-ranking government official, a patrolman's office, if abused, has great potential for social harm and thus invites independent interest in the qualifications and performance of the person who holds the position. See *Time, Inc.* v. *Pape,* 401 U.S. 279, 91 S. Ct. 633, 28 L. Ed. 2d 45 (a deputy chief of detectives on the Chicago police department considered to be a public official); *St. Amant* v. *Thompson,* 390 U.S. 727, 730, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (a deputy sheriff considered to be a public official); *Rosenblatt* v. *Baer,* 383 U.S. 75, 85, 86 S. Ct. 669, 15 L. Ed. 2d 597 (the supervisor of a county recreation area considered to be a public official); *Coursey* v. *Greater Niles Township Publishing Corporation,* 40 Ill. 2d 257, 239 N.E.2d 837 (a patrolman in a police department considered to be a public official); *Gilligan* v. *King,* 48 Misc. 2d 212, 264 N.Y.S.2d 309 (a police lieutenant considered to be a public official). In any

event, the publication involved "concerns an issue of public or general interest" sufficient to invoke the *New York Times Co.* rule. *Rosenbloom* v. *Metromedia, Inc.,* 403 U.S. 29, 44, 91 S. Ct. 1811, 29 L. Ed. 2d 296. The plaintiff did not except to the trial court's charge to the jury that, as a public official in the conduct of his duties, he must show that the letter was published by The Hour with "actual malice" as defined in *New York Times Co.* v. *Sullivan,* supra. The plaintiff has the burden of proving actual malice, a burden he claims to have met by showing that The Hour published the letter with reckless disregard of whether it was false. We cannot agree that the plaintiff has sustained this burden.

To sustain his burden, the plaintiff offered evidence to prove that no effort was made by The Hour to verify any facts in the letter, although both eye-witnesses and a police reporter were available; that the letter contained material not reported in The Hour's prior published news article; that the only reputation of its author, the defendant Lippe, known to The Hour when the letter bearing her name was delivered to the newspaper by her sister, was that Lippe was a business woman in the community; and that the letter was published only to increase circulation and make money.

These considerations, singly and cumulatively, fall short of proving The Hour's reckless disregard for the accuracy of its publication of the letter concerning the plaintiff. Although the United States Supreme Court has observed that "reckless disregard" cannot be fully encompassed in one infallible definition and that its outer limits remain to be charted through case-by-case adjudication; *St. Amant* v. *Thompson,* supra; several cases since the

*New York Times Co.* case furnish meaningful guidance for further definition of a reckless publication.

In *Garrison* v. *Louisiana,* 379 U.S. 64, 74, 85 S. Ct. 209, 13 L. Ed. 2d 125, the court emphasized that only those false statements made with a "high degree of awareness of their probable falsity" satisfy the *New York Times Co.* test, the reasonable care standard of mere negligence being insufficient. In *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130, 153, 87 S. Ct. 1975, 18 L. Ed. 2d 1094, the court stated that recovery by public officials in defamation actions required proof that the publication was "published recklessly despite the publisher's awareness of probable falsity." And in *St. Amant* v. *Thompson,* 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262, the court required "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" in order to show the reckless disregard for truth or falsity that demonstrates actual malice.

By no proper test of recklessness was the printing of the letter by The Hour a reckless publication concerning a public officer. Nothing in the plaintiff's evidence indicates an awareness by The Hour of the probable falsity of Lippe's statements about the plaintiff. Failure to investigate does not of itself satisfy this standard. *Curtis Publishing Co.* v. *Butts,* supra; *New York Times Co.* v. *Sullivan,* supra, 286–88, 292; *Garrison* v. *Louisiana,* supra, 73–75, 79; *St. Amant* v. *Thompson,* supra, 733; *Time, Inc.* v. *Hill,* 385 U.S. 374, 388–89, 87 S. Ct. 534, 17 L. Ed. 2d 456; *Beckley Newspapers Corporation* v. *Hanks,* 389 U.S. 81, 84, 88 S. Ct. 197, 19 L. Ed. 2d 248. That prior news reports failed to mention the charges contained in the published letter does not evidence sufficient doubt of truth in the minds of The Hour's

publishers. In *New York Times Co.* v. *Sullivan,* supra, 287–88, the court held that the failure to check the publication against presumably conflicting recent New York Times news stories in its own files was, in itself, sufficient to support at most a finding of negligence, which is constitutionally insufficient to show the recklessness that is required for a finding of malice.

Consideration of the reputation of the informant likewise fails to establish that The Hour had obvious reasons to doubt her veracity or the accuracy of the letter. The plaintiff failed to introduce evidence of her reputation for veracity or to demonstrate a low community assessment of her trustworthiness or unsatisfactory experience with her. See *St. Amant* v. *Thompson,* supra. The publishers of The Hour knew Lippe to be a local merchant and had no reason to entertain serious doubts as to the truth of her letter since such a publication would, doubtless, cause her some embarrassment.

Finally, the plaintiff contends that the letter was published merely to increase circulation and make money. A "letters to the editor" column provides an important outlet for the promulgation of information and ideas by persons who do not themselves have access to publishing facilities but who wish to exercise their freedom of speech even though they are not members of the press. The Hour did not fabricate the letter; it was not the product of its publisher's imagination; it was not based on an unverified anonymous communication. The contents of the letter were not so inherently improbable that only a reckless man would have put them into circulation. See *St. Amant* v. *Thompson,* supra.

Since the verdict is against the evidence and there appears to be no justification for a new trial, there

was error in the denial of The Hour's motion to set aside the verdict and for judgment notwithstanding the verdict. *Masterson* v. *Atherton,* 149 Conn. 302, 316, 179 A.2d 592; *Petrillo* v. *Bess,* 149 Conn. 166, 171, 179 A.2d 600; *Senderoff* v. *Housatonic Public Service Co.,* 147 Conn. 18, 21, 156 A.2d 517.

## II

We turn now to the assignments of error raised by the defendant Lippe. She assigns as error the denial of her motions for a directed verdict, to set aside the verdict, and to render judgment notwithstanding the verdict.

We consider first the slander count. Lippe contended at the trial in support of these motions that none of her statements, as a matter of law, constitutes a slander actionable per se. These motions were denied and, despite Lippe's request that the jury be charged that the utterances were not slanderous per se, the court proceeded to charge as follows, to which the defendant excepted: "One common category of slander actionable per se consists of defamatory oral utterance charging a person with a crime. In this State the expression is limited to charging one with a crime punishable by law and involving moral turpitude. In his complaint the plaintiff alleges, in the first count, that the defendant Flora Lippe called the plaintiff an ape and exercised police brutality. Now, the exercise of police brutality is actionable per se, because it charges the plaintiff with a crime, and the crime is that of assault. Insofar as that utterance is concerned, the action is founded upon slander action [sic] per se; the results carry damages without proof of special damages."

Having admittedly alleged or proven no special damages, the plaintiff here is limited to a recovery

of general damages on a showing that the utterance was slanderous per se. *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 93 A.2d 292; *Yavis* v. *Sullivan*, 137 Conn. 253, 76 A.2d 99; *Petrucelli* v. *Catapano*, 107 Conn. 122, 139 A. 634; *Ventresca* v. *Kissner*, 105 Conn. 533, 136 A. 90; *Hassett* v. *Carroll*, 85 Conn. 23, 81 A. 1013. We have recognized slander to be actionable per se where the utterance falsely charges a crime involving moral turpitude or to which an infamous penalty is attached. *Yavis* v. *Sullivan*, supra, 259; *Hassett* v. *Carroll*, supra; *Yakavicze* v. *Valentukevicious*, 84 Conn. 350, 353, 80 A. 94; *Page* v. *Merwin*, 54 Conn. 426, 434, 8 A. 675; *Hoag* v. *Hatch*, 23 Conn. 585, 589. Moral turpitude, we have observed, is a vague and imprecise term to which no hard and fast definition can be given. *Kurtz* v. *Farrington*, 104 Conn. 257, 262, 132 A. 540; *Drazen* v. *New Haven Taxicab Co.*, 95 Conn. 500, 506, 111 A. 861. A general definition applicable to the case before us is that moral turpitude involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellowman or to society in general, contrary to the accepted rule of right and duty between man and law. *Kurtz* v. *Farrington*, supra; *Drazen* v. *New Haven Taxicab Co.*, supra. Assault is a crime "held lacking in the element of moral turpitude." *Drazen* v. *New Haven Taxicab Co.*, supra, 508.

While the precise statute involved is not given, the crime of assault charged here, occurring in 1966, appears to be a violation of § 53-174 of the General Statutes (repealed October 1, 1971) which is punishable by imprisonment for not more than one year or merely by a fine of not more than $500. Such a crime, involving no moral turpitude, is not an infamous crime under any of the definitions of that

term.  *Drazen* v. *New Haven Taxicab Co.,* supra; see *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472, 208 A.2d 341.

We conclude then that, as a matter of law, the utterance involved here, even if false, does not charge a crime which constitutes a slander actionable per se.

We have recognized other categories of slander actionable per se.  See Wright & Fitzgerald, Conn. Law of Torts (2d Ed.) § 147.  Only one other, however, might apply here.  It is that a defamation is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business. *Proto* v. *Bridgeport Herald Corporation,* 136 Conn. 557, 566, 72 A.2d 820, and cases cited.

We recognize a distinction under this rule between libel and slander, however.  "Spoken words are actionable per se only if they charge a general incompetence or lack of integrity.  They are not slanderous per se if they charge no more than specific acts, unless those acts are so charged as to amount to an allegation of general incompetence or lack of integrity." *Proto* v. *Bridgeport Herald Corporation,* supra, 567; *Camp* v. *Martin,* 23 Conn. 86, 91; *Sumner* v. *Utley,* 7 Conn. 257, 260.

Specifically, the plaintiff offered evidence to prove that in response to an inquiry at the scene made by Captain Prato, a superior of the plaintiff, as to what had transpired, Lippe stated to him that "this ape almost twisted my arm off."  On arriving at police headquarters, she addressed Lieutenant Varanay, a superior of the plaintiff on the Norwalk police department, and accused the plaintiff of "attempting to tear her arm out of its socket."  Such utterances do

not charge more than specific acts and, therefore, cannot, as a matter of law, be slander actionable per se.

Other words uttered in the presence of those assembled, "clown," "big fat ape," "smart aleck," "big fat oaf," and "stupid son of a bitch," were here merely gross and vulgar expressions of abuse. The general rule has long been that such words of general abuse, regardless of how rude, uncouth or vexatious are not slanderous per se and cannot support recovery in a slander action in the absence of a showing of special damages. Notes, 13 A.L.R.3d 1286, 1290, 37 A.L.R. 883, 885.

We conclude, then, that none of the allegedly slanderous words could be considered actionable per se in any sense. The matter then becomes one of law for the court. *Charles Parker Co.* v. *Silver City Crystal Co.,* 142 Conn. 605, 612, 116 A.2d 440; *Burns* v. *Telegram Publishing Co.,* 89 Conn. 549, 552, 94 A. 917; *Donaghue* v. *Gaffy,* 54 Conn. 257, 266, 7 A. 552. The trial court erred in refusing to direct a verdict for the defendant Lippe on the slander count.

### III

The complaint charging Lippe with libel is limited to facts alleging false and malicious statements made by her in a letter sent to the police commissioners, to the chief of police and to the mayor of the town of Norwalk, containing the words: "He came up to me, grabbed my arm, twisted it back until it felt as though it came loose out of its socket," and "I would like to bring charges against Officer Moriarty for being abusive and using unnecessary force and treating a respectable citizen like a common criminal." Lippe, in her motion for a directed verdict, argued that these statements are at most libel per quod rather

than libel per se, and are thus not actionable, since special damages were not proven. See *Proto* v. *Bridgeport Herald Corporation,* 136 Conn. 557, 564, 72 A.2d 820.

Libel may be actionable per se if it charges improper conduct or lack of skill or integrity in one's profession and is of such a nature that it is calculated to cause injury to one in his profession. *Charles Parker Co.* v. *Silver City Crystal Co.,* supra; *Proto* v. *Bridgeport Herald Corporation,* supra, 566, and cases cited. The first statement complained of does on its face impute improper conduct. *Proto* v. *Bridgeport Herald Corporation,* supra, 565. Written words are libelous per se where they charge only a single act, provided that act is something derogatory to the plaintiff in the practice of his profession; *Proto* v. *Bridgeport Herald Corporation,* supra, 567, *Corsello* v. *Emerson Bros., Inc.,* 106 Conn. 127, 130, 137 A. 390; and is of such a nature that it is likely to injure the plaintiff in that profession. *Proto* v. *Bridgeport Herald Corporation,* supra, and cases cited.

A jury could reasonably infer from the evidence presented that the charges contained in the letter to the plaintiff's superiors were calculated to cause the plaintiff injury in his profession and that they were false. Thus, the court was correct in refusing to grant the directed verdict, unless, as a matter of law, the communication was privileged.

Defendant Lippe, as well as The Hour, was entitled to the benefit of the rule of *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686, which she had pleaded as a special defense. The *New York Times Co.* case itself, and several subsequent cases considered by the United States Supreme Court, involved libel actions brought

by "public officials" or "public figures" in which individuals and not newspapers were defendants. *St. Amant* v. *Thompson,* 390 U.S. 727, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (action against a defeated candidate for the United States Senate); *Rosenblatt* v. *Baer,* 383 U.S. 75, 86 S. Ct. 669, 15 L. Ed. 2d 597 (action against a newspaper columnist); *Linn* v. *Plant Guard Workers,* 383 U.S. 53, 86 S. Ct. 657, 15 L. Ed. 2d 582 (action against a labor union); *New York Times Co.* v. *Sullivan,* supra (action against persons whose names appeared as sponsors of the advertisement printed in that newspaper). The individual "citizen-critic" of official conduct is equally entitled to the constitutional guarantees which require a public official to prove that the libelous falsehood was made with actual malice. *New York Times Co.* v. *Sullivan,* supra, 279.

The actual malice sufficient to destroy this immunity is shown where the defendant utters the statement with knowledge that it is false or with a reckless disregard of the truth or falsity of the facts stated.[2]

As the plaintiff concedes in his brief, sufficient evidence was presented here to allow a jury to conclude that Lippe was confused and seriously mistaken as to the facts but had a bona fide and honest intent and was not reckless in her publication by reason of her confusion. Conflicting evidence, however, was also presented which would allow a jury to conclude from the evidence and reasonable infer-

---

[2] We note, of course, that even if the plaintiff was not a public official, all citizens have a conditional privilege to communicate to police officials respecting the perpetration of an alleged criminal act. *State* v. *Pape,* 90 Conn. 98, 96 A. 313; *Flanagan* v. *McLane,* 87 Conn. 220, 87 A. 727; *Anderson* v. *Cowles,* 72 Conn. 335, 44 A. 477; *Dennehy* v. *O'Connell,* 66 Conn. 175, 33 A. 920; 50 Am. Jur. 2d, Libel and Slander, § 214.

ences therefrom that Lippe acted knowing the statements to be false or with at least reckless disregard as to whether her statements were true.

The jury could choose to believe the plaintiff's evidence that he exercised no excessive force and, thus, reasonably conclude that the allegations in Lippe's letter were deliberate falsifications. *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130, 153, 87 S. Ct. 1975, 18 L. Ed. 2d 1094. Professions of good faith will be unlikely to prove persuasive to the finder of fact who concludes that a story is fabricated by a defendant or is a product of her imagination. *St. Amant* v. *Thompson,* supra, 732.[3]

We conclude then that the trial court was correct in denying Lippe's motion for a directed verdict. Lippe, however, also assigns as error the refusal of the trial court to charge the jury that she was entitled to and relied on the defense of fair comment on a public official, which requires that the plaintiff must show actual malice on her part. She had specially pleaded this defense, had requested such a charge, and had properly excepted to its exclusion. In our earlier discussion we concluded that such a charge was required under the *New York Times Co.* rule.

The trial court erred in refusing to charge as requested.

## IV

Finally, the defendant Lippe filed a counterclaim against the plaintiff for damages for physical in-

---

[3] This is a sufficient showing to prevent a directed verdict pursuant to General Statutes § 52-237 where, as here, no retraction was requested, and no special damages were alleged. *Proto* v. *Bridgeport Herald Corporation,* 136 Conn. 557, 564, 72 A.2d 820; *Sandora* v. *Times Co.,* 113 Conn. 574, 579, 582 n., 155 A. 819; *Hassett* v. *Carroll,* 85 Conn. 23, 36, 81 A. 1013.

juries which she alleged were inflicted on her by the plaintiff. The jury returned a verdict for the plaintiff. Lippe assigns error in the court's charge that to constitute an actionable assault and battery there must have been an "unlawful" force applied to one person by another. Lippe claims the use of the term "unlawful" could confuse the jury, since the claimed perpetration of the assault was on a policeman. The court, however, in its charge went on to define for the jury "unlawful" as being either intentional, wanton or negligent conduct in the application of force. The court further told the jury that absent these elements, the application of the force is not "unlawful." That is a fair statement of our law. *Russo* v. *Porga,* 141 Conn. 706, 708–9, 109 A.2d 585. A policeman may use no more force than is reasonably necessary to effect an arrest. *Lentine* v. *McAvoy,* 105 Conn. 528, 136 A. 76. The charge was correct in law, adapted to the issues and sufficient to guide the jury. *Antz* v. *Coppolo,* 137 Conn. 69, 72, 75 A.2d 36; Maltbie, Conn. App. Proc. § 76.

There is error, the judgment against The Hour is set aside and the case is remanded with direction to render judgment on the third count for the defendant The Hour Publishing Company in accordance with its motion for a directed verdict. The judgment against the defendant Flora Lippe is set aside and the case is remanded with direction to render judgment for the defendant Flora Lippe on the first count in accordance with her motion for a directed verdict. A new trial is ordered on the second count. There is no error on the counterclaim.

In this opinion the other judges concurred.