GERALD PETERS *v.* STEVEN CARRA ET AL.
(4523)

HULL, DALY and BIELUCH, Js.

Submitted on briefs December 12, 1986—decision released April 7, 1987

*Ronald E. Cassidento* filed a brief for the appellant (named defendant).

*Terence D. Mariani* filed a brief for the appellee (plaintiff).

DALY, J. The plaintiff police officer instituted this action in three counts against the named defendant claiming intentional assault, negligent assault and defamation.[1] The defendant filed a counterclaim alleging assault, illegal arrest and the use of unnecessary force by the plaintiff. The jury rendered a verdict for the plaintiff on each count of the complaint and the counterclaim. The defendant appeals from the denial of his motion to set aside the verdict, claiming (1) that it is inconsistent to render a plaintiff's verdict on both the intentional and the negligent assault counts, (2) that the plaintiff failed to prove that the defendant knew the alleged defamation would be republished, and (3) that any defamation was privileged since it was made to the plaintiff's superior through official channels. We disagree.

The jury could reasonably have found the following facts. In April, 1983, the plaintiff, a sergeant in the Winsted police department, with another officer, responded to a request for assistance at the residence of Lesley Jasmin, who stated that she wanted the defendant to leave her premises. The defendant was asked to leave but refused. A scuffle ensued as the plaintiff arrested the defendant for disorderly conduct, and the plaintiff's hand was injured. The defendant asserts that he was assaulted, thrown to the ground, beaten and kicked by the plaintiff. The defendant's attorney[2] sent a letter to the Winsted chief of police stating that the plaintiff "forced Mr. Carra out of the apartment at gunpoint. Once outside, Mr. Carra was thrown to the ground by Sgt. Peters and subsequently beaten and kicked. The actions by Sgt. Peters were unprovoked,

---

[1] The plaintiff also sued Lesley Jasmin for intentional and negligently inflicted assault. The jury found for Jasmin on each count. She therefore has no part in this appeal. Thus, in this opinion "defendant" refers only to the named defendant.

[2] We note that the defendant's attorney on this appeal was not the author of either of these letters.

unjustified and in violation of Mr. Carra's civil rights."
A similar letter was later sent to the town clerk. In part,
that letter alleged that: "On April 28, 1983, Sgt. Ger-
ald Peters, while on duty and acting within the scope
of his authority as a police officer . . . responded to
a complaint . . . . After entering the residence of
Leslie Jasmin, Sgt. Peters removed Steven Carra from
the apartment. Once outside the apartment, Sgt. Peters
threw Mr. Carra to the ground, struck and kicked him
repeatedly. Subsequent to this assault, Sgt. Peters
placed his service revolver to Mr. Carra's head and
cocked the hammer."

The defendant's first claim of error involves the trial
court's charge to the jury that since counts one and two
of the complaint were "kind of mutually exclusive,"
they could return a plaintiff's verdict on only one of
the counts. He asserts that the jury ignored this instruc-
tion and rendered judgment for the plaintiff on each
count. The defendant fails to point out, however, that
the trial court also instructed the jury that "there is
a list of three counts, and if you find for the plaintiff
on any one of the three counts, *or all of the three counts,*
or any two of the three counts, fill in those blanks on
those counts which you find for the plaintiff." (Empha-
sis added.)

The trial court record shows that the defendant never
undertook to require the plaintiff to choose between
intentional and negligent assault. *Fabrizi* v. *Golub,* 134
Conn. 89, 92, 55 A.2d 625 (1947). The defendant did
not except to the jury charge, and, in fact, approved
the forms of the verdict. *Marko* v. *Stop & Shop, Inc.,*
169 Conn. 550, 556, 364 A.2d 217 (1975). Furthermore,
the defendant failed to clarify any perceived incon-
sistencies by requesting that interrogatories be submit-
ted to the jury in accordance with Practice Book § 312.
Thus, we will not review the claim.

In his second claim of error, the defendant argues that the plaintiff carries the burden of proving that he, the defendant, knew or should have known that the chief of police would republish the alleged defamation. The plaintiff concedes that he is a public official and as such must prove actual malice on the part of the defendant. *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). That is, he is required to prove by clear and convincing evidence that the defendant initially published the defamatory falsehood with actual knowledge that the statement was false or with reckless disregard for its falsity. Id. He need not prove, as the defendant argues, that the defendant knew or should have known that the chief of police would *republish* the contents of the letter. This claim is without merit.

In *Moriarty* v. *Lippe,* 162 Conn. 371, 378, 294 A.2d 326 (1972), a letter written to the chief of police was a sufficient basis for a libel per se action. Thus, we reach the third claim of error, the privileged communication argument. The defendant claims the letter to the chief of police was a privileged communication because it was a criticism of a public official. The scenario in this case is similar to that in *Moriarty* v. *Lippe,* supra, wherein a police officer brought an action for libel against a woman who sent a letter to the chief of police following her arrest. In that case, our Supreme Court pointed out that "[a]lthough a comparatively low-ranking government official, a patrolman's office, if abused, has great potential for social harm and thus invites independent interest in the qualifications and performance of the person who holds the position." *Moriarty* v. *Lippe,* supra, 378. Thus, the defendant did enjoy a privilege, though not unbounded, to criticize the plaintiff. "Libel may be actionable per se if it charges improper conduct or lack of skill or integrity in one's profession and is of such a nature that it is calculated to cause

injury to one in his profession. . . . The [defendant's] statement complained of does on its face impute improper conduct. . . . Written words are libelous per se where they charge only a single act, provided that act is something derogatory to the plaintiff in the practice of his profession . . . and is of such a nature that it is likely to injure the plaintiff in that profession." (Citations omitted.) Id., 386. The plaintiff therefore, clearly has a right to bring an action in libel against a citizen.

This individual "citizen-critic" of official conduct is, nonetheless, entitled to the constitutional guarantees which require a public official to prove, by clear and convincing evidence, that the defamatory statements were made with actual malice as defined in *New York Times* v. *Sullivan,* supra.

In this case, the jury was faced with weighing the credibility and conflicting testimony of several eyewitnesses. We have carefully reviewed the record and the exhibits in this case and have concluded that clear and convincing evidence was presented for the jury to find that the defendant caused letters to be written containing deliberate falsifications.

The trial court did not err in refusing to set aside the verdict.

In this opinion the other judges concurred.