[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
 I. Background
The Plaintiff Robert Stapleton has brought this action against the Defendants Monro Muffler, Inc. and its assistant manager Mark Cross. The complaint is in four counts. Count One alleges breach of contract; Count Two alleges libel per se; Count Three alleges intentional infliction of emotional distress; and CT Page 12270 Count Four alleges violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-11Oa et seq.
Paragraphs 1 through 9 of Count One are common to all counts. These allege in substance that the Defendants neglected or refused to honor a written guarantee for repair or replacement of certain automobile parts sold by Defendant Monro Muffler, Inc. to the Plaintiff, a Hartford Police officer, for his personal motor vehicle.
The Defendants have moved to strike Counts Two, Three and Four. The allegations and issues pertinent to each count will be considered in order. The reasons relied upon by the defendants are not specified in the motion, as required by Practice Book (1998 Rev.) § 10-41, but are set out in Defendants' supporting memorandum of law. As Plaintiff has not objected to this format, the Court will consider the motion.
A motion to strike is the proper vehicle to contest the legal sufficiency of a complaint, counterclaim or cross-complaint, or any prayer for relief therein. Practice Book § 152; Ferrymanv. Groton, 212 Conn. 138, 142 (1989). Only the grounds specified in the motion may be considered. Meredith v. Police Commission,182 Conn. 138, 140 (1980). "[A]ll the facts well pleaded and those facts necessarily implied from the allegations are taken as admitted." Amodio v. Cunningham, 182 Conn. 80, 82-83 (1980). "[T]he court must construe the facts alleged in a pleading in the manner most favorable to the plaintiff." Rowe v. Godou,209 Conn. 273, 278 (1988). "The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them." Ferryman v. Groton, supra, 142. If the facts provable under the allegations would support a defense or cause of action, the motion to strike must fail. Id.
 II. Count Two
Count Two alleges liability for libel per se. It contains 16 numbered paragraphs, incorporating by reference Paragraphs 1 through 9 of Count One. Paragraphs 10 through 14 of Count Two are also incorporated as such by reference in Counts Three and Four.
Paragraph 11 alleges that after the Plaintiff left the Defendants' premises. "the Defendant Mark Cross called the Glastonbury Police[1] and filed a written complaint stating that the Plaintiff was intoxicated and not acting in a CT Page 12271 manner consistent with a competent police officer." Paragraph 12 alleges that the Plaintiff was not intoxicated. Paragraph 14 alleges that the Glastonbury Police contacted the Connecticut State Police regarding the complaint, and thereafter a Connecticut State Trooper "went to the Plaintiff's house and advised him of the complaint." Paragraph 16 alleges that the Plaintiff is a Hartford Police Officer, and that the Defendants' above-described action constitutes libel per se. The document containing the alleged libelous statement is not before the Court.
A police officer is a public official. Kelley v. Bonney,221 Conn. 549, 581-82 (1992). "In an action for defamation, a public official is prohibited from recovering damages for a defamatory falsehood relating to his official conduct unless he proves by clear and convincing evidence that the falsehood was published with `actual malice'. New York Times Co. v. Sullivan,376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) . . . The state of mind that constitutes actual malice has been defined as `with knowledge that it was false or with reckless disregard of whether it was false or not.'" (Citations omitted.) Kelley v.Bonney, supra, 580. In addition, the Plaintiff must prove by clear and convincing evidence that the defamatory statement, if otherwise actionable, is false in some material respect. Woodcockv. Journal Publishing Co., 230 Conn. 525, 535 (1994); Holbrook v.Casazza, 204 Conn. 336, 358 (1987). This is a heavy burden.
1. Absolute Privilege
The Defendants first assert that the alleged defamatory statement is absolutely privileged. Absolute privilege applies to statements made in or in contemplation of judicial proceedings. Restatement Second of Torts, §§ 586-587. The privilege applies to statements made in connection with administrative proceedings which are quasi-judicial in nature. Petyan v. Ellis,200 Conn. 243, 246 (1986). This includes statements made in connection with an agency's quasi-judicial investigatory powers. Magnan v.Anaconda Industries, Inc., 37 Conn. Sup. 38, 45-46 (1980) (statement on "blue slip" discharge form absolutely privileged as preliminary to quasi-judicial proceeding).
However, the motion is premature in this regard. "Privilege is an affirmative defense in a defamation action and must, therefore, be specifically pleaded by the defendant." Miles v.Perry, 11 Conn. App. 584, 594 n. 8 (1987). The defense of absolute CT Page 12272 privilege is not yet before the Court.
2. Libel Per Se
The Defendants next assert that the alleged statement is neither libelous per se nor libelous at all. A written defamatory statement may constitute libel per quod or libel per se. The former requires pleading and proof of actual damages, while the latter is actionable without proof of actual damages. Battista v.United Illuminating Co., 10 Conn. App. 486, 491-92 (1987).
"A libel per quod is not libelous on the face of the communication, but becomes libelous in light of extrinsic facts known by the recipient of the communication . . . Libel per se, on the other hand, is a libel the defamatory meaning of which is apparent on the face of the statement . . ." Id. Whether a publication is libelous per se is a question for the court, and must be determined upon the face of the publication itself. Id., 492.
"Two of the general classes of libel which, it is generally recognized, are actionable per se are (1) libels charging crimes and (2) libels which injure a man in his profession and calling."Proto v. Bridgeport Herald Corp. , 136 Conn. 557, 565-662 (1950);Battista v. United Illuminating Co., supra, 492. "To fall within the category of libels that are actionable per se because they charge crime, the libel must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached." Proto v. Bridgeport Herald Corp. , supra, 566. "The modern view of this requirement is that the crime be a chargeable offense which is punishable by imprisonment." Battista v. UnitedIlluminating Co., supra, 493.
To fall within the second category of libels, the libel must be one which "charges improper conduct or lack of skill or integrity in one's profession and is of such a nature that it is calculated to cause injury to one in his profession." Moriarty v.Lippe, 162 Conn. 371, 386 (1972); Proto v. Bridgeport HeraldCorp. , supra, 566; Peters v. Carra, 10 Conn. App. 410, 413-14
(1987). "A distinction is recognized, however, in this connection between slander and libel . . . Spoken words are actionable per se only if they charge a general incompetence or lack of integrity. They are not slanderous per se if they charge no more than specific acts, unless those acts are so charged as to amount to an allegation of general incompetence or lack of integrity." CT Page 12273 (Citations omitted.) Proto v. Bridgeport Herald Corp. , supra 567. "[Wlords of general abuse, regardless of how rude, uncouth or vexatious are not slanderous per se and cannot support a recovery in a slander action in the absence of showing of special damages." Moriarty v. Lippe, supra, 385; "Written words, on the other hand, are libelous per se if they charge only a single act, provided that act is something derogatory to the plaintiff in the operation of his business or in the practice of his profession . . . and if the charge is of such a nature that it is likely to injure the plaintiff in that business or profession." (Citations omitted.) Proto v. Bridgeport Herald Corp. , supra, 567.
Neither the Plaintiff in his complaint nor the Defendants in their motion distinguish between claims of slander per se and claims of libel per se. The Court cannot now do so. The actual alleged libelous per se written statement is not set forth in the complaint. It is not before the Court, as the Court cannot resort to extrinsic evidence on a motion to strike. The Court can only act on what is alleged in the complaint.
There is nothing in Count Two that indicates that the alleged defamatory statements were communicated to Plaintiff's employer, or that any action thereon was taken or contemplated by his employer or any Police Department. The alleged statements did not impugn Plaintiff's performance of his official duties, but concerned an off-duty incident. This distinguishes this case from such cases as Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., supra, Moriarty v. Lippe, supra, and Peters v. Carra, supra, all involving defamatory statements concerning the performance of the particular plaintiff's employment duties.
In addition, the Plaintiff has not pleaded the proper standard for malice. A statement made with actual malice "is made with knowledge of its falsity or with reckless disregard of whether it is false." Holbrook v. Casazza, supra, 346. The Paragraph 13 allegation that the Defendants "knew or should have known" of falsity is a negligence standard and does not suffice. Moreover, "proof that a defamatory falsehood has been uttered `with bad or corrupt motive' or with an intent to inflict harm will not be sufficient to support a finding of actual malice." Id., 346-47. Count Two is insufficient to allege a claim of libel per se.
 III. Count Three
CT Page 12274
Count Three alleges liability for intentional infliction of emotional distress. In order to prevail on this cause of action, the Plaintiff must establish four elements. These are "(1) that the [defendant] intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." DeLaurentis v. New Haven,220 Conn. 225, 267 (1991). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort . . ." Id., quotingHustler Magazine v. Falwell, 485 U.S. 46, 53, 108 S.Ct. 876,99 L.Ed.2d 41 (1988).
Paragraphs 15 through 18[2] of Count Three specifically allege that the Defendants' conduct "was extreme and outrageous;" that the Defendants knew or should have known that emotional distress was a likely result of this conduct; and that the distress was severe. Contrary to the Defendants' claim, these allegations are sufficient to withstand a motion to strike.
Neither Petyan v. Ellis, supra, 254, nor Drew v. K-MartCorp. , 37 Conn. App. 239, 251-52 (1995) relied upon by the Defendants support the motion. Petyan affirmed a directed verdict entered on the ground that the alleged offending statement was absolutely privileged, and held that in any event absolutely privileged conduct cannot be the basis for intentional infliction of emotional distress. Petyan v. Ellis, supra, 254.[3]
 Drew, supra, 52, does not stand as claimed for the proposition that "`great humiliation' does not constitute severe emotional distress." Defendants' supporting memorandum of law, page 15. Instead, Drew affirmed a directed verdict entered on the ground that on the basis of the evidence presented at trial, the plaintiff failed as a matter of law to prove the required elements of intent and severity.
 IV. Count Four
Count Four alleges a violation of the Connecticut Unfair CT Page 12275 Trade Practices Act ("CUTPA"), General Statutes § 42-110a et seq. Section 42-110b(a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In determining whether a practice is unfair or deceptive, our Supreme Court has adopted the criteria set out in the "cigarette rule" by the Federal Trade Commission, as follows:
 (1) [W]hether the practice without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].
A.-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215
(1990), quoting Conaway v. Prestia, 191 Conn. 484, 492 (1983), in turn quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233, 244-45
n. 5 (1972).
In order to allege a CUTPA violation properly, the plaintiff must allege, interalia, that the acts complained of were performed in the conduct of a trade or commerce. General Statutes § 42-110b(a); Quimby v. Kimberly Clarke Corporation,28 Conn. App. 660, 669 (1992). "A claim under CUTPA must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based." S.M.S. Textile Mills, Inc. v. Brown,Jacobson, Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 797
(1993).
The Defendants contend that Count Four should be stricken for a number of reasons. First, they contend that CUTPA does not lie for a simple breach of contract, upon which they assert Count Four is based. Next, they contend that CUTPA requires a general business practice, and does not apply to a single act as here alleged. These claims will be reviewed in order.
1. Breach of Contract
Under proper aggravating circumstances, CUTPA may apply to a breach of contract. Gebbie v. Cadle Co., 49 Conn. App. 265, 279
(1998). Count Four does not allege merely a simple breach of contract. It alleges that the Defendants' statement to the CT Page 12276 Glastonbury Police was falsely and maliciously made "for the purpose of intimidating the Plaintiff into foregoing his rights under warranty and/or guarantee" (Paragraph 13), and that such conduct done "in order to intimidate customers is unscrupulous and causes substantial injury to customers" (Paragraph 16).
These allegations sufficiently allege a CUTPA claim.
2. Single Act
There has been a split of authority in the Superior Court on whether a CUTPA claim can be based on a single or deceptive act. That issue has been put to rest. Gebbie v. Cadle Co., supra, affirmed the trial court's applying CUTPA to a single act. That act was the refusal of the defendant to honor an agreement of which it had knowledge entered into by the plaintiff with the defendant's predecessor.
Count Four sufficiently alleges a CUTPA claim.
 V. Summary
The motion to strike is granted as to Count Two, and is denied as Counts Three and Four.
David L. Fineberg Superior Court Judge