IN RE ALLISON G.*
(AC 24265)

Foti, West and DiPentima, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued February 18—officially released August 31, 2004

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellant (petitioner).

*Marc William Vallen*, with whom, on the brief, was *Scott Allen Sandler*, for the appellee (respondent mother).

*Elisabeth Borrino*, for the appellee (respondent father).

DiPENTIMA, J. The petitioner, the commissioner of children and families (commissioner), appeals from the judgment of the trial court adjudicating the minor child uncared for due to the child's specialized needs and dismissing, sua sponte, the count of neglect. Her parents are the respondents in this matter. The commissioner claims that (1) the court improperly entered adjudicative and dispositional orders pursuant to a "plea bargain" where there was no mutual assent of the parties to the commitment of the child to the commissioner solely on the basis of an adjudication that the child was uncared for, (2) the trial judge improperly refused to recuse herself at the conclusion of her involvement in the judicial pretrial settlement conference, and (3) the neglect count of the petition was improperly dismissed without affording the commissioner the opportunity to present evidence, thereby depriving the commissioner of fundamental fairness. Because there is no practical relief that this court can grant the commissioner, the appeal is dismissed.

The petition and summary of facts filed pursuant to Practice Book § 32-1, now § 33a-1, alleged the following facts. The child, who has cerebral palsy, was born on November 4, 1999. During the weekend of November 9, 10 and 11, 2002, with the permission of the respondents, the child was in the care of her maternal aunt and uncle. During that time, she was sexually abused.

On November 12, 2002, the respondents noticed a bruise on the child's vagina. After consulting with family members, they took her to the hospital. On November 13, 2002, she was examined by Frederick Berrien, a physician, at the Children's Center at St. Francis Hospital. Berrien concluded that the child had been sexually

molested because she sustained injuries to the vaginal area and, on the basis of the nature of the injuries, she had been penetrated. Berrien also concluded that the injuries were sustained sometime between November 9 and 11, 2002.

Prior to that time, the uncle and his son, M, had been accused of sexually molesting children. The respondents had knowledge of the uncle's prior history of sexually abusing children. M was staying with his father during the weekend of November 9, 10 and 11, 2002.

On November 13, 2002, the respondents stated that the child spent almost every weekend with the aunt and uncle, even though they did not like sending her there because she often returned with unexplained bruises. The respondents also stated that they could not keep the aunt and uncle from taking the child for weekends because to do so would cause fights within the family. Despite their knowledge of the child's unexplained injuries and of the uncle's history of sexually abusing children, the respondents continued to send the child to the home of the aunt and uncle for weekends.

On November 15, 2002, the commissioner filed a petition alleging that the child was neglected in that (1) she was being "denied proper care and attention physically, educationally, emotionally or morally," (2) she was "being permitted to live under conditions, circumstances or associations injurious to [her] well being" and (3) she has been abused and has had "physical injury inflicted by other than accidental means" and has "a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation or exploitation, deprivation of necessities, emotional maltreatment or cruel punishment." The petition further alleged that the child was uncared for in that her home "cannot provide the specialized care which the physical, emotional or mental condition of the child

. . . requires."[1] In an addendum to the petition, the commissioner also alleged abuse as to both the counts alleging neglect and that the child was uncared for in that "[d]espite knowledge that the child has sustained unexplained injuries while in the care of the aunt and uncle, the [respondents] continued to allow the child to be in their care" and "[d]espite knowledge that the uncle had previously sexually abused children, the [respondents] continued to allow the child to be in his care."

We now focus on the unusual procedural history of this case. On May 7, 2003, a pretrial settlement conference was held before the Superior Court, Juvenile Matters, at Hartford, *Hon. Frederica S. Brenneman,* judge trial referee. In the course of the conference, counsel for the respondents indicated that they were willing to admit to the count that the child was uncared for, would agree to have their child committed to the custody of the commissioner pursuant to General Statutes § 46b-129 (j) and would comply with the specific steps required by the commissioner as conditions for the child's return to the respondents. The respondents were unwilling, however, to admit that that their actions and inactions played a role in the sexual assault and thereby constituted neglect.

Thereafter, the parties appeared before the court on the record. The commissioner objected at the outset of the proceeding on the basis that the case was contested and that no agreement was reached with regard to the neglect allegations. The commissioner further argued that the judge should recuse herself because she had participated in the pretrial settlement conference. Over the commissioner's objection, the court canvassed

---

[1] The petition is a form pleading with general allegations to be checked under three headings: "Neglected in that . . . Uncared for in that . . . and Dependent in that . . . ."

the respondents with regard to their admissions and committed the child to the custody of the commissioner solely on the basis of her adjudication as being uncared for. The court also ordered the specific steps for reunification which had been formulated and agreed to by the parties when the child had first been removed from the respondents.

The commissioner requested a hearing on the remaining allegations of neglect. The court then ruled as follows: "I'm going to dismiss the allegations of neglect without finding and without prejudice. I'm not saying the state could not prove neglect or even abuse at trial. . . . I'm saying it is not necessary to use the extremely limited resources of the judicial department in order to have a dual basis for committing a child when there is no denial of the basic underlying fact this child was sexually abused by a relative next door to the [respondents] back in November. Because no reasonable purpose would be served, except possibly a punitive purpose . . . I am going to say that I have taken jurisdiction, on the uncared-for admission." Later, the court explained, "All I did was reopen the plea on [the count alleging that the child was uncared for] in order to obtain an admission. I obtained an admission, and based upon that, I have the power to find that [a] further adjudicatory basis was not required in order to obtain a proper disposition, which is commitment." This appeal followed.

On June 24, 2003, the commissioner filed a notice of noncompliance pursuant to Practice Book § 64-1, indicating that the court had not filed a memorandum of decision or signed a transcript of its oral ruling. On October 23, 2003, the commissioner filed a motion to compel compliance with that rule. On October 27, 2003, the court signed the transcript of its ruling. On November 7, 2003, subsequent to the filing of the main briefs in this appeal, the court sua sponte released an articula-

tion of its ruling.[2] There was no motion for articulation filed by any party pursuant to Practice Book § 66-5. Unfortunately, this procedural deviation is not helpful.[3]

The commissioner claims that, in dismissing the neglect count of its petition sua sponte before the opportunity for an evidentiary hearing on that count, the court deprived the commissioner of fundamental fairness. The commissioner also argues that the court improperly usurped the discretionary powers of the executive branch in contravention of the separation of powers doctrine under the state constitution. In response to these claims, the respondents argue that because the commissioner has obtained all the relief that she requested, that is, commitment, the commissioner is not aggrieved. They further argue that this court lacks jurisdiction to hear the appeal because no practical relief can be awarded to the commissioner. Because these arguments raise issues of subject matter jurisdiction, we first address the issue of mootness.

"Mootness deprives this court of subject matter jurisdiction. . . . The test for determining mootness is not [w]hether the [commissioner] would ultimately be granted relief . . . . The test, instead, is whether there is any practical relief this court can grant the appellant. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions,

---

[2] According to the commissioner's reply brief, after the parties had filed briefs in this appeal, the trial court ordered them to file briefs with it on the following issue: "[W]hether a civil plaintiff who pleads more than one ground for relief, and is awarded the full amount of damages claimed, based on a single ground, has an absolute right to a full evidentiary hearing on any or all of the alternative grounds pleaded?"

[3] In its articulation, the court made a number of factual findings presumably based on reports and recommendations in the court file. Under the circumstance of this case, where the court had conducted a pretrial settlement conference and accepted a plea but had not taken evidence or made findings on the record, that was improper.

disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *In re Amelia W.*, 62 Conn. App. 500, 505, 772 A.2d 619 (2001).

While the petition sounded in two counts, the commissioner sought one type of relief: commitment of the child to the custody of the commissioner. See General Statutes § 46b-129 (j). The respondents admitted the allegations that the child was uncared for, and the court ordered commitment of the child. Thus, there appears to be no further relief available to the commissioner. In bringing this appeal, the commissioner, however, seeks a commitment based on an adjudication of neglect. She argues that the type of adjudication does affect the future proceedings involving the child. In this argument, the commissioner posits that there are proceedings beyond commitment in which the commissioner will be prejudiced because of the lack of adjudication on the neglect count. Nevertheless, the commissioner has not provided any authority, statutory, regulatory or case law, that supports her position that the adjudication as uncared for will lead to a disposition distinct from one that would have occurred under a neglect adjudication.

In part, the commissioner argues that commitment cannot be analogized to civil claims of relief, where money damages may be awarded under a variety of counts without distinction. While we agree with that proposition and note with considerable concern the complications arising from the informality and imprecision of the pleadings in these proceedings, that argument does not persuade us that this case is not moot.

Although the commissioner argues rather eloquently that the legislature has enacted a statutory scheme reflecting a "strong public policy interest in having an adjudication that accurately reflects the factual circum-

stances of the case in order to provide fair notice of what the respondents must do to regain guardianship of their children and to avoid the termination of their parental rights," we have perused the pertinent statutes, i.e., General Statutes §§ 17a-3, 17a-15 and 46b-129, and find no language supporting that proposition. In fact, none of the possible consequential events following commitment, that is, revocation of commitment, termination of parental rights, or reunification, as provided for in the statutes, requires different actions by the commissioner depending on the adjudication. Nowhere in the statutory scheme does the legislature provide that the type of adjudication affects the course of the commitment.[4] Accordingly, the commissioner has not persuaded us that the commitment of the child on the basis of her adjudication as uncared for will necessarily result in specific steps or a permanency plan different from those that result from an adjudication of neglect.[5]

Because the commissioner has received an order of commitment, we can afford her no practical relief. Further, the issues before this court are not capable of repetition, yet evading review and, therefore, do not qualify for review under the exception to the mootness doctrine as set forth in *Loisel* v. *Rowe*, 233 Conn. 370, 382–88, 660 A.2d 323 (1995). Accordingly, the appeal is dismissed as moot.

The appeal is dismissed.

In this opinion the other judges concurred.

---

[4] We note, however, that under General Statutes § 17a-93 (i), the legislature established a status of "protective supervision," available by court order only after an adjudication of neglect. This status allows the child to remain in his place of abode as an alternative disposition to commitment.

[5] Further, to the extent that the commissioner focuses on the conduct of the respondents, this court notes that an adjudication of neglect "relates to the status of the child and is not necessarily premised on parental fault. A finding that the child is neglected is different from finding who is responsible for the child's condition of neglect." *In re David L.*, 54 Conn. App. 185, 191, 733 A.2d 897 (1999).