# IN RE ALLISON G.*
## (SC 17288)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Reporter of Judicial Decisions

Argued September 12—officially released November 1, 2005

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellant (petitioner).

*Elisabeth Borrino*, for the appellee (respondent father).

*Brian R. Hole*, with whom was *Ben M. Krowicki*, for the appellee (respondent mother).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the Appellate Court properly dismissed as moot the appeal of the petitioner, the commissioner of children and families, from the judgment of the trial court adjudicating Allison G., the minor child of the respondent parents, Valerie Q. and Ernie G., uncared for and dismissing, sua sponte, the petitioner's allegation of neglect.[1] See *In re Allison G.*, 84 Conn. App. 718, 854 A.2d 1124 (2004). The petitioner claims that, although the adjudication of uncared for resulted in the child's commitment to the custody of the department of children and families (department), with stipulated conditions for the child's return, the petitioner's challenge to the trial court's judgment is not moot because: practical relief still may be obtained by an adjudication of the neglect allegation; prejudicial collateral consequences could arise should she not obtain such an adjudication; and the circumstances fall under an exception to the

---

[1] This court granted the petitioner's petition for certification to appeal to this court limited to the following question: "Did the Appellate Court properly dismiss the appeal of the [petitioner] as moot?" *In re Allison G.*, 271 Conn. 936, 861 A.2d 509 (2004).

mootness doctrine. The respondents claim that the Appellate Court properly dismissed the appeal because the petitioner obtained all of the relief that she had sought by way of the trial court's order of commitment and the issuance of specific steps for reunification of the child with the respondents. The respondents contend, therefore, both that the department is not aggrieved by the judgment and that the appeal is moot. We conclude that the petitioner is aggrieved by the trial court's dismissal of the neglect allegation and that the appeal is not moot. Accordingly, we reverse the judgment of the Appellate Court.

The petitioner alleged the following facts in support of her petition seeking to have the trial court adjudicate Allison as uncared for and neglected. Allison was born on November 4, 1999. She has been diagnosed with cerebral palsy and is nonverbal. On the weekend of November 9 through 11, 2002, with the permission of the respondents, Allison was in the care of her aunt and uncle, Christine S. and Mark S. While in their care, Allison was sexually abused. On November 12, 2002, the respondents noticed a bruise on Allison's vagina. After consulting with family members, on November 13, the respondents brought Allison to the Children's Center at Saint Francis Hospital and Medical Center, where she was examined by Frederick Berrien, a physician. Berrien determined that Allison had sustained a blunt injury in the vaginal area and had been penetrated, although he could not determine the object with which she had been penetrated. He concluded that Allison had been sexually molested and determined that the abuse had occurred in the preceding days, sometime between November 9 and November 11. Mark S. and his son, Mark M., have been accused of sexually molesting children in the past. Mark M. had visited his father during the weekend of November 9.

The respondents admitted that they allowed Allison to spend almost every weekend with Christine S. and Mark S., even though they did not like to do so as Allison often returned home with bruises and other unexplained injuries. They further admitted that they could not keep Christine S. and Mark S. from taking care of Allison because such an action would cause disagreements within the family. Accordingly, the petition alleged that, "[d]espite knowledge of these unexplained injuries and [Mark S.'] previous history of sexually abusing children, the [respondents] have failed to protect [Allison] from further injuries and abuse . . . ." It further alleged that Allison "has specialized needs in that she has been sexually abused, is nonverbal and has been diagnosed with cerebral palsy."

On the basis of these allegations, on November 15, 2002, the petitioner concurrently filed in the Superior Court, Juvenile Matters, an application seeking an order of temporary custody and, pursuant to General Statutes § 46b-129 (a), a petition alleging that Allison is: (1) neglected in that she "is being denied proper care and attention, physically, educationally, emotionally or morally," "is being permitted to live under conditions, circumstances or associations injurious to [her] well being" and "has been abused and has . . . [both] physical injury or injuries inflicted by other than accidental means . . . [and] a condition which is the result of maltreatment such as . . . sexual molestation"; and (2) uncared for in that her home "cannot provide the specialized care which the physical, emotional or mental condition of the child/youth requires." On November 19, 2002, the trial court, *Wollenberg, J.*, granted an order vesting the department with temporary custody of Allison.

An unusual turn of events that form the basis for the petitioner's appeal then ensued. On May 7, 2003, a scheduled pretrial settlement conference was con-

ducted off the record before *Hon. Frederica S. Brenneman,* judge trial referee. In the course of that conference, the respondents indicated that they would be willing to admit to the allegation of uncared for and to agree both to allow Allison to be committed to the department's custody and to comply with the specific steps required by the petitioner for Allison's return to their home. The respondents would not admit that they were responsible for having failed to protect Allison from the sexual abuse and, therefore, would not admit to the neglect allegation.

Thereafter, the parties appeared on the record, at which time Judge Brenneman recited for the record the substance of the settlement conference and indicated that it would accept the respondents' "plea." The petitioner vigorously objected to proceeding on the matter. Specifically, the petitioner argued that the case was disputed in that she had not agreed to drop the neglect allegation in exchange for a plea on the uncared for allegation. The petitioner further argued that, because the case was disputed, it was improper for the same judge, who actively had participated in the settlement conference, to preside over the proceeding.

The trial court concluded that it properly could exercise jurisdiction over the petition in light of the respondents' admission to one of the two allegations. The court then explained to the respondents the facts underlying the uncared for allegation to which they had agreed to admit: "My understanding is that [the respondents] would admit to count two, uncared for, in that [Allison's] home . . . could not provide the specialized care which her physical, emotional and mental condition required at that time. And the facts underlying that, is that [Allison] was sexually abused in the home of your relatives next door. And that you were not able to protect that from happening, you were not able to say no, you can't go. You obviously didn't have a crystal

ball to know that there was going to be sexual abuse. [Allison] was sexually abused, there is no question about that. The issue is the responsibility for that and this allegation says that your home couldn't meet her needs at that time. It doesn't hold you responsible for the sexual abuse." The petitioner objected to the trial court's characterization of the facts, claiming that she had a right to a full trial to prove neglect and, specifically, that the respondents were responsible for the child's injuries because they knew or should have known about the abuse. The trial court concluded that a dual basis for adjudication would be a waste of judicial resources in light of the fact that the respondents did not deny that a relative had sexually abused Allison and were willing to agree to commit the child to the department's custody and to the conditions for reunification. It further determined that adjudication on the neglect allegation would serve "no reasonable purpose . . . except possibly a punitive purpose . . . ." Accordingly, the trial court dismissed the neglect allegation without prejudice and approved as final the specific steps for reunification previously proposed by the petitioner.[2] The petitioner requested that the court stay its decision on the neglect petition and leave the temporary custody order in place pending the petitioner's appeal, but the trial court denied that request.

On May 23, 2003, the petitioner filed an appeal from the judgment of the trial court to the Appellate Court, claiming, inter alia, that the trial court improperly had failed: (1) to recuse itself at the conclusion of the settlement conference; and (2) to conduct an evidentiary hearing on the neglect allegation in the absence of the

[2] The trial court apparently adopted as final the original steps proposed by the petitioner and did not include certain proposed changes characterized by the petitioner as "minor," such as a requirement that an investigation be conducted as to whether a maternal grandparent might be a suitable foster parent.

petitioner's assent to the dismissal of that allegation.[3] On June 24, 2003, pursuant to Practice Book § 64-1, the petitioner filed a notice informing the appellate clerk that the trial court had neither issued a memorandum of decision nor signed a transcript of an oral decision. After the petitioner and the respondents filed briefs in the Appellate Court, the trial court issued a notice to the parties requesting that they submit briefs to it on the issue of "whether a civil plaintiff who pleads more than one ground for relief, and is awarded the full amount of damages claimed, based on a single ground, has an absolute right to a full evidentiary hearing on any or all of the alternative grounds pleaded." The trial court indicated therein that it would issue a written opinion by September 16, 2003. On October 27, 2003, the trial court signed a transcript of the May 7, 2003 hearing, adding a written notation, "[a]rticulation to be filed within 120 days of receipt of final brief." On November 7, 2003, the trial court, sua sponte, issued a lengthy articulation of its May 7 decision, including factual findings in support of its conclusion that dismissal of the neglect allegation was proper under the circumstances and explaining the petitioner's "apparent ignorance of the meaning of 'uncared for' as interpreted by [the trial] court."

Thereafter, the Appellate Court dismissed the petitioner's appeal for lack of subject matter jurisdiction.[4]

[3] In addition to several arguments related to her claim that the trial court improperly had adjudicated the matter, the petitioner also claimed that the trial court improperly had refused to mark materials she had offered as exhibits for identification or full exhibits in support of the neglect allegation.

[4] Although it dismissed the appeal, the Appellate Court noted that the trial court's factual findings in its articulation "presumably [were] based on reports and recommendations in the court file. Under the circumstance[s] of this case, where the court had conducted a pretrial settlement conference and accepted a plea but had not taken evidence or made findings on the record, that was improper." *In re Allison G.*, supra, 84 Conn. App. 724 n.3. We agree with the Appellate Court that the trial court's reliance on those materials was improper. We note that such a result underscores the rationale for our admonition that, in the absence of both parties' consent, "[w]hen a

*In re Allison G.*, supra, 84 Conn. App. 726. Although the respondents had raised the argument that the court should dismiss the appeal because the petitioner was not aggrieved by the trial court's judgment, the Appellate Court dismissed the appeal on the alternate jurisdictional ground that it was moot. Id. Specifically, it concluded that, although the petition had sounded in two counts, the petitioner had sought only one form of relief—commitment of the child—and the trial court had granted that relief. Id., 725. The Appellate Court concluded, therefore, that, in the absence of any authority demonstrating that an adjudication of the neglect allegation could result in a different disposition of the case, the appeal was moot. Id. The court rejected the petitioner's contention that the failure to adjudicate the neglect allegation could affect adversely the course of future proceedings. Id., 725–26. Finally, the Appellate Court noted that the "capable of repetition, yet evading review" exception to the mootness doctrine was inapplicable. Id., 726, citing *Loisel* v. *Rowe*, 233 Conn. 370,

judge engages in a pretrial settlement discussion in a court case, he should automatically disqualify himself from presiding in the case in order to eliminate any appearance of impropriety and to avoid subtle suspicions of prejudice or bias." *Timm* v. *Timm*, 195 Conn. 202, 204, 487 A.2d 191 (1985); see also *State* v. *D'Antonio*, 274 Conn. 658, 680–81, 877 A.2d 696 (2005) (noting "bright line rule standing for the proposition that it is improper for a trial judge to preside over a defendant's trial after having participated actively in unsuccessful plea negotiations in the case" but concluding violation of rule is not per se constitutional violation).

We further note, however, that, for the reasons discussed in part I of this opinion, the articulation underscores the importance of an adjudication of both counts of the petition in the present case. Specifically, as a reason for accepting the plea on the uncared for count and dismissing the neglect count, the trial court relied, in part, on a psychologist's report concluding that the respondents were significantly limited intellectually, but nonetheless recommending that Allison be returned to the respondents under protective supervision and with the provision of home services. Such facts clearly would be material in future proceedings to determine permanent custody of the child, but that evidence improperly was relied upon by the trial court in the absence of an adversarial trial on the merits of the neglect petition.

382–88, 660 A.2d 323 (1995). This certified appeal followed.

The petitioner claims that the Appellate Court improperly dismissed the appeal as moot because practical relief is available by way of a trial on the merits of the neglect count, and there are prejudicial collateral consequences flowing from the trial court's failure to adjudicate that count. Specifically, the petitioner contends that the trial court's failure to adjudicate the neglect count and to issue the findings in support thereof may impair her ability to fulfill her statutory obligation to achieve a timely, permanent placement of Allison. See General Statutes § 46b-129 (k). The petitioner further contends that, even if the appeal otherwise is moot, the circumstances satisfy the exception to the mootness doctrine of a claim that is capable of repetition yet evading review.

The respondents assert two jurisdictional grounds for affirming the Appellate Court's judgment. First, they claim that the petitioner was not aggrieved by the trial court's judgment because the petitioner obtained precisely the relief she had sought from the court—both with respect to the order of commitment and the order of the specific steps necessary for reunification. Second, the respondents contend that the appeal is moot because: (1) no actual controversy between the parties exists with respect to Allison's commitment; (2) no practical relief can be afforded the petitioner; (3) there is not a reasonable possibility that the petitioner will suffer prejudicial collateral consequences from the trial court's judgment; and (4) the "capable of repetition, yet evading review" exception to the mootness doctrine is inapplicable under the facts of this case. We conclude that the petitioner is aggrieved by the trial court's judgment, and the appeal is not moot.

We begin by noting that both aggrievement and mootness implicate the court's subject matter jurisdiction.

*Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 256, 773 A.2d 300 (2001) (aggrievement); *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1, 6, 688 A.2d 314 (1997) (mootness). Because "[a] possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised"; *Sadloski* v. *Manchester*, 228 Conn. 79, 84, 634 A.2d 888 (1993), on appeal after remand, 235 Conn. 637, 668 A.2d 1314 (1995); we must address whether the petitioner has overcome both hurdles to appellate review. A determination regarding a trial court's subject matter jurisdiction presents a question of law, and, accordingly, we exercise plenary review. *In re Shawn S.*, 262 Conn. 155, 164, 810 A.2d 799 (2002).

Aggrievement, which implicates a party's standing, and mootness are related concepts. Both doctrines are "founded on the same policy interests . . . namely, to assure the vigorous presentation of arguments concerning the matter at issue." (Internal quotation marks omitted.) *ABC, LLC* v. *State Ethics Commission*, 264 Conn. 812, 824, 826 A.2d 1077 (2003). One commentator has described mootness as "the doctrine of standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." H. Monaghan, "Constitutional Adjudication: The Who and When," 82 Yale L.J. 1363, 1384 (1973). In the present case, the issues of aggrievement and mootness coalesce to present two sides of the same coin, namely, the issue of whether the petitioner is entitled to appellate review of the trial court's judgment when the disposition of the petition was precisely that which she had sought.

I

We begin with the issue of whether the petitioner is aggrieved by the trial court's judgment. "It is settled

law that the right to appeal is purely statutory and is allowed only if the conditions fixed by statute are met. . . . In all civil actions a requisite element of appealability is that the party claiming error be aggrieved by the decision of the trial court. . . . The test for determining aggrievement encompasses a well settled twofold determination: first, the party claiming aggrievement must demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest shared by the community as a whole; second, the party claiming aggrievement must establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Citations omitted; internal quotation marks omitted.) *Windham Taxpayers Assn.* v. *Board of Selectmen*, 234 Conn. 513, 522–23, 662 A.2d 1281 (1995); see also General Statutes § 52-263.[5]

It cannot be disputed that the petitioner has satisfied the first prong of that test in that the petitioner occupies a unique status in the adjudication of neglect petitions, as discussed later in this opinion, that establishes an interest in such proceedings distinct from that of the general public. The respondents' aggrievement claim in the present case, however, relates to the second prong of that test in that they contend that the petitioner has suffered no injury as a result of the trial court's judgment because she obtained all the relief she had sought. We disagree.

---

[5] General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, *if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial,* including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9." (Emphasis added.)

As a general rule, "a party that prevails in the trial court is not aggrieved. . . . Moreover, [a] party cannot be aggrieved by a decision that grants the very relief sought. . . . Such a party cannot establish that a specific personal and legal interest has been specially and injuriously affected by the decision." (Citations omitted; internal quotation marks omitted.) *Seymour* v. *Seymour*, 262 Conn. 107, 110–11, 809 A.2d 1114 (2002); accord *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 443, 844 A.2d 836 (2004); see also 5 Am. Jur. 2d 47, Appellate Review § 276 (1995) ("One who has received in the trial court all the relief that he or she has sought therein is not aggrieved by the judgment and has no standing to appeal. In particular, a litigant has no right to appeal a judgment in his favor merely for the purpose of having the judgment based on a different legal ground than that relied upon by the trial court . . . ."). "[A] prevailing party . . . can be aggrieved [however] if the relief awarded to that party falls short of the relief sought. *Blue Cross/Blue Shield of Connecticut, Inc.* v. *Gurski*, 47 Conn. App. 478, 481, 705 A.2d 566 (1998) (concluding plaintiff was aggrieved despite prevailing in trial court because it was denied full amount of damages it requested), citing *Branch* v. *Occhionero*, 239 Conn. 199, 681 A.2d 306 (1996)." (Internal quotation marks omitted.) *Seymour* v. *Seymour*, supra, 114–15.

In considering this issue, we begin with some general observations about the context in which this claim arises. A neglect petition and concomitant request for an order of commitment are not a typical civil action. "A neglect petition is sui generis and, unlike a complaint and answer in the usual civil case, does not lead to a judgment for or against the parties named." *In re David L.*, 54 Conn. App. 185, 191, 733 A.2d 897 (1999). In such proceedings, the petitioner acts not to vindicate her personal rights but, acting for the state as parens patriae, to ensure, first and foremost, the child's safety

and, second, a permanent placement of the child as expeditiously as possible. *In re Joshua S.*, 260 Conn. 182, 196–97 n.15, 796 A.2d 1141 (2002); *In re Jason C.*, 255 Conn. 565, 576–77, 767 A.2d 710 (2001); *In re Jonathan M.*, 255 Conn. 208, 231–32, 764 A.2d 739 (2001). The petitioner does not seek the monetary or equitable relief of a typical civil action, but, rather, actions by the court that will further the dual goals of safety and permanency. Accordingly, "relief" in this context takes on a somewhat different meaning, and the petitioner's interests in seeking an adjudication *and* disposition upon filing a neglect petition do not fit neatly within the aggrievement rubric. See *In re David L.*, supra, 191–93 (distinguishing between significance of adjudication and disposition of neglect petition).

Further evidence of this imprecise fit is that the disposition of a petition resulting in an order committing a child to the department's custody does not terminate the court's jurisdiction over the matter. See, e.g., General Statutes § 17a-10 (d) (requiring petitioner to petition court for extension of original commitment period); General Statutes § 46b-141 (b) (authorizing court to extend order of commitment; mandating that court hold initial permanency hearing within twelve months after original commitment and additional hearing every twelve months thereafter). Rather, there are further proceedings at which the adjudication, independent of the disposition, can have significance.

More specifically, we note that, under § 46b-129 (j), prior to awarding custody of the child to the department pursuant to an order of commitment, the trial court must both *find* and *adjudicate* the child on one of three grounds: uncared for, neglected or dependent. The grounds are distinct, each statutorily defined. See General Statutes § 46b-120 (7), (9) and (10), as amended

by Public Acts 2005, No. 05-250, § 1.[6] Adjudication on any of these grounds thus requires attendant findings, on the record, in support thereof. The trial court's determination thereafter as to whether to maintain or revoke the commitment is largely premised on that prior adjudication. See Practice Book § 35a-14 (c) ("[w]hether to maintain or revoke the commitment is a dispositional question, based on the prior adjudication, and the judicial authority shall determine whether it is in the best interest of the child to maintain or revoke upon a fair preponderance of the evidence"). "The court, in determining whether cause for commitment no longer exists, would obviously look to the original cause for commitment to see whether the conduct or circumstances that resulted in commitment continue to exist." *In re Cesar G.*, 56 Conn. App. 289, 294, 742 A.2d 428 (2000). Accordingly, the trial court considers not only the adjudication, but also the attendant facts. See id., 294–95 (concluding that trial court, when deciding whether to revoke commitment, properly considered facts set forth in trial court's memorandum of decision ordering original commitment of child).

The adjudication and findings also have significance in that, if they result in an order of commitment, they

---

[6] General Statutes § 46b-120, as amended by No. 05-250, § 1, of the 2005 Public Acts, provides in relevant part: "The terms used in this chapter shall, in its interpretation and in the interpretation of other statutes, be defined as follows . . . (7) [a] child or youth may be found 'dependent' whose home is a suitable one for the child or youth, save for the financial inability of the child's or youth's parents, parent or guardian, or other person maintaining such home, to provide the specialized care the condition of the child or youth requires . . . (9) a child or youth may be found 'neglected' who (A) has been abandoned, or (B) is being denied proper care and attention, physically, educationally, emotionally or morally, or (C) is being permitted to live under conditions, circumstances or associations injurious to the well-being of the child or youth, or (D) has been abused; (10) a child or youth may be found 'uncared for' who is homeless or whose home cannot provide the specialized care that the physical, emotional or mental condition of the child requires. . . ."

also trigger a requirement that the court issue specific steps for reunification. General Statutes § 46b-129 (j) ("[t]he court shall order specific steps which the parent must take to facilitate the return of the child or youth to the custody of such parent"); see, e.g., *In re Jeisean M.*, 270 Conn. 382, 388–89, 852 A.2d 643 (2004); *In re Devon B.*, 264 Conn. 572, 579, 825 A.2d 127 (2003). Although the specific steps provide a benchmark by which the court measures whether either reunification or termination of parental rights is appropriate, the court necessarily will consider the underlying adjudication and the attendant findings. See *In re Devon B.*, supra, 579 (underscoring importance of factual circumstances prompting department to file for custody of child, both as to issuance of specific steps and services necessary to assist parent in satisfying those steps). Therefore, the adjudication and findings serve a dual function—they provide a context to the court for the specific steps and they provide notice to the parents of issues that may be relevant to the court in determining a permanent plan for the child's custody.

For example, in the adjudication of a neglect petition, the trial court could find that a parent had perpetrated abuse on his or her child or had knowingly allowed the abuse to occur but nevertheless denied responsibility for the harm. The department may then propose as one of the steps that the parent undergo counseling to understand the causes and consequences of abuse. In a subsequent proceeding, whether the parent ever acknowledged responsibility for the abuse would be relevant to the court's subsequent determination as to either reunification or termination of parental rights, irrespective of whether the parent had complied with that step.

It is of paramount significance that, in the present case, the petitioner asserted two grounds in her petition—neglect and uncared for—each of which was sup-

ported by independent factual allegations.[7] The trial court's sua sponte dismissal of the neglect count and the attendant allegations left as the only finding on the record that Allison is uncared for—specifically, that she "has specialized needs in that she has been sexually abused, is nonverbal and has been diagnosed with cerebral palsy." As a result, a trial court in subsequent proceedings reasonably could not rely on the petitioner's mere allegation of neglect, particularly in the absence of any evidence to support a finding that the respondents bore responsibility for allowing the abuse to occur.[8]

The respondents correctly point out that the petitioner legally would not be barred from raising the alleged neglect in subsequent proceedings. We note, however, that, as a practical matter, it is far more likely that a court considering reunification, extension of commitment or termination of parental rights would deduce that such a claim lacked merit based upon the trial court's sua sponte dismissal of the neglect count, as well as its comments on the record assuring the respondents that they could not have prevented the abuse. Indeed, the trial court's articulation defending

---

[7] We are mindful that the petition set forth a single summary of facts and that some of the allegations properly could have been considered by the trial court as applicable to either ground—uncared for or neglected. Nonetheless, certain allegations clearly were addressed to neglect, and the trial court's acceptance of the respondents' plea based solely on one allegation, namely, that they were unable to protect Allison from the abuse, along with its dismissal of all the remaining factual allegations, reasonably supports the petitioner's contention that the remaining allegations were offered in support of the neglect count. We further note that, although the trial court, at one point, and the respondents, at oral argument, characterized the neglect and uncared for counts as being asserted in the alternative, the petition form does not evidence such a distinction, and the petitioner's insistence before the trial court that she was entitled to an adjudication on both claims belies such a conclusion.

[8] As we have noted previously; see footnotes 3 and 4 of this opinion and accompanying text; the trial court precluded the petitioner from preserving evidence for the record to support the neglect count.

that dismissal makes that result all the more likely. See footnote 4 of this opinion. Moreover, because a significant period of time could lapse between the time the original neglect petition was filed and a subsequent proceeding that ultimately determines permanency, the petitioner's ability to present evidence pertaining to the neglect could be impaired substantially. Thus, the independent significance of the neglect allegation and attendant findings militates in favor of concluding that the petitioner is aggrieved in that she failed to obtain an adjudication of the neglect count.

The present case hardly can be considered tantamount to a civil action seeking damages on a two count complaint alleging, for example, breach of contract and unjust enrichment. Although the plaintiff in such a case might wish to prevail on the merits of both counts, that plaintiff reasonably could not be said to have been prejudiced after obtaining the full measure of recovery sought under one count. Indeed, should actual prejudice be likely to occur from an adverse finding in such a case, despite obtaining the full measure of relief, there is case law recognizing that such consequences may give rise to sufficient grounds to establish aggrievement. See *Windham Taxpayers Assn.* v. *Board of Selectmen,* supra, 234 Conn. 523–24 n.15; *Equitable Life Assurance Society of the United States* v. *Slade,* 122 Conn. 451, 464–65, 190 A. 616 (1937); see also *Hercules, Inc.* v. *AIU Ins. Co.,* 783 A.2d 1275, 1277 and n.8 (Del. 2000) (citing case law standing for principle that "a prevailing party is aggrieved, and may appeal from a judgment in its favor, if it includes a collateral adverse ruling that can serve as a basis for the bars of res judicata, collateral estoppel, or law of the case in the same or other litigation").

A more apt comparison, however, by way of illustrating the significance of the adjudication itself, is in the context of a criminal proceeding. See *State* v. *Mor-*

*rissette*, 265 Conn. 658, 665, 830 A.2d 704 (2003) (concluding that § 52-263 applies to both civil and criminal appeals); *State* v. *Talton*, 209 Conn. 133, 136–37, 547 A.2d 543 (1988) (analyzing issue of aggrievement in criminal context). Consider a trial court's sua sponte dismissal of one charge in a two count indictment after having accepted the defendant's plea on the other count on the ground of judicial economy in that the defendant, by the state's own recommendation and the court's determination, would not receive a longer sentence were he convicted on the other count. It is self-evident that the state must be deemed to be aggrieved by the trial court's action. The relief sought by the state is not merely the sentence but also the judgment of guilt on each charge and the attendant record for future proceedings.

We recognize that there are important distinctions between a criminal case and neglect proceedings. The focal point of a neglect petition is not condemnation of the parents, but, rather, the status of the child. *In re David L.*, supra, 54 Conn. App. 191–92; *In re Elisabeth H.*, 45 Conn. App. 508, 511, 696 A.2d 1291, cert. denied, 243 Conn. 903, 701 A.2d 328 (1997), cert. denied, 523 U.S. 1137, 118 S. Ct. 1840, 140 L. Ed. 2d 1091 (1998). That status, however, is determined as a result of the adjudication, not the disposition of the petition. An adjudication of neglect that results in an order of commitment necessarily implies that the neglect occurred due to some action or inaction on the part of the custodial parents. A finding to that effect does not serve merely a punitive purpose, as suggested by the trial court. Rather, the parents' willingness thereafter to accept responsibility reasonably may bear on whether reunification or termination of parental rights is in the child's best interest. Accordingly, we conclude that the petitioner is aggrieved by the trial court's judgment in that the relief sought in this context encompassed the

adjudication of both allegations as well as the ultimate disposition of the petition.

## II

We now briefly turn to the issue of whether the petitioner's appeal is moot, a claim that largely is disposed of by our preceding discussion. "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . *Board of Education* v. *Naugatuck*, 257 Conn. 409, 416, 778 A.2d 862 (2001).[9]

"The first factor relevant to a determination of justiciability—the requirement of an actual controversy— is premised upon the notion that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. *Pamela B.* v. *Ment*, 244 Conn. 296, 323, 709 A.2d 1089 (1998). Moreover, [a]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . *Giaimo* v. *New Haven*, 257 Conn. 481, 492–93, 778 A.2d 33 (2001)." (Internal

[a] The respondents claim that, in addition to the appeal being moot because the court cannot afford practical relief, the petitioner cannot demonstrate that there is an actual controversy between the parties and that the interests of the parties are adverse. This claim largely is predicated on the respondents' view that the disposition, and not the adjudication, of the petition can provide the only basis of controversy. For the reasons we previously have set forth in this opinion, we disagree, noting that the respondents contest the allegation of neglect.

quotation marks omitted.) *State* v. *McElveen*, 261 Conn. 198, 204–205, 802 A.2d 74 (2002).

Notably, in the present case there have been no intervening circumstances during the pendency of the appeal to render the appeal moot. Rather, the Appellate Court concluded that the trial court's disposition of the case ipso facto rendered the appeal moot. *In re Allison G.*, supra, 84 Conn. App. 726. For the reasons previously set forth in part I of this opinion, however, we conclude that the petitioner's appeal is not moot because practical relief is available by way of an adjudication of the neglect count.

Indeed, the petitioner made every effort to avoid mootness of this issue by asking that the trial court stay its disposition of the petition, leaving in place the less favorable terms of the order of temporary custody, so that the petitioner could contest the propriety of the court's action, both with respect to dismissing the neglect allegation and with respect to having the same judge who had participated in the pretrial negotiations preside over the adjudication of the petition. Under the respondents' view, however, even though the trial court's action gave rise to a colorable claim of structural error; see footnote 4 of this opinion; a challenge to such an action would be barred as moot. We cannot countenance such an application of our justiciability requirements.

To the extent that this relief may not fall squarely within our practical relief jurisprudence, we further conclude that there is a sufficient likelihood of prejudicial collateral consequences from the dismissal of the neglect count that gives rise to an indirect injury for which the court can grant relief. Compare *Williams* v. *Ragaglia*, 261 Conn. 219, 227–28, 802 A.2d 778 (2002) (concluding that appeal challenging department's revocation of special care license was not rendered moot

by subsequent uncontested grant of legal custody of children to plaintiff because there was reasonable possibility that department could use license revocation to plaintiff's detriment in future proceedings). Accordingly, we need not reach the issue of whether the capable of repetition yet evading review exception to mootness applies.

The respondents note, however, that the petitioner has filed a petition seeking to terminate their parental rights and has alleged therein the same facts that she had alleged in support of the neglect petition.[10] They contend, therefore, that the petitioner reasonably cannot demonstrate prejudicial collateral consequences from the trial court's dismissal of the neglect allegation. We disagree. The petitioner already has been prejudiced by the absence of the adjudication, which would have allowed her to preserve evidence and to obtain factual findings on the basis of that evidence. Indeed, as we have discussed previously herein, we cannot be certain that a trial court reviewing the termination petition will consider those neglect allegations in light of the previous dismissal.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings.

In this opinion the other justices concurred.

---

[10] This court granted a motion filed by the respondent mother asking that this court take judicial notice of a petition filed by the petitioner on November 21, 2003, seeking termination of the respondents' parental rights. That petition is still pending, and there is nothing in the record suggesting that the respondents are not contesting this petition.